STATE OF CONNECTICUT *v.* ALICE F. MOORE
(8507)

SPALLONE, FOTI and CRETELLA, Js.

Argued September 13—decision released November 6, 1990

*Michael K. Courtney,* assistant public defender, with whom, on the brief, was *Rory Chapdelaine,* certified legal intern, for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *James Diamond,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of the crime of interfering with an officer in violation of General Statutes § 53a-167a. The defendant claims that the trial court (1) improperly instructed the jury on the element of intent, (2) improperly restricted her cross-examination of two of the state's witnesses, and (3) did not correctly state the law on the lesser included offense. We agree that the trial court improperly instructed the jury and remand for a new trial. Because the second issue raised by the defendant is likely to arise again at the new trial, we will address it also.

At approximately 11:45 p.m. on July 13, 1988, Officers Joseph LeRose and Anthony Maher of the Danbury police department were dispatched to the Beaver Street housing development in response to a domestic dispute. When the officers arrived at the scene, a group of bystanders pointed to the defendant's brother, Kevin Moore, and told the officers, "There he is. Get him." The officers asked Moore to stop, but he ignored them and attempted to walk between them. LeRose put out his hand in an attempt to stop Moore and a struggle ensued.

The officers wrestled Moore to the ground and LeRose attempted to place handcuffs on him. At this time, the defendant began to yell, "Leave him alone.

He didn't do anything wrong." In an attempt to assist her brother, the defendant put her arm around LeRose's neck from behind and pulled him backward, twisting his head and neck. LeRose was able to free himself from the choke hold, but, as he attempted to handcuff the suspect and resume his duties, the defendant took the handcuffs from the officer's hands.

LeRose and Maher radioed police headquarters for assistance. A short time after their call, Sergeant William Barlow arrived on the scene. Barlow asked the defendant to release LeRose from her renewed grasp, but she refused. Barlow then forcibly removed LeRose from her grip. The defendant's brother was carried to a police cruiser and taken away.

I

The defendant claims that the trial court's instructions to the jury on the element of intent required for a conviction of interfering with an officer violated her constitutional rights by relieving the state of its burden of proving the requisite specific intent in violation of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). We agree.

In its general instructions to the jury on intent, the trial court stated: "A person's intent may be inferred from his comments and actions. A person is deemed to intend the natural consequence of his or her acts. It is often impossible and never necessary—never necessary to prove criminal intent by direct evidence. Ordinarily intent can be proved only by circumstantial evidence. Now, I'll get into circumstantial evidence right after intent. What a person's intent or intentions were is necessarily very much a matter of inference. No person can be expected to come in here and testify that he looked into another person's mind and saw therein a certain purpose or intent. The only way you

can determine what the defendant's purpose or intent was, aside from her own testimony as it relates to intent, is by determining what the circumstances were surrounding that conduct. And from those circumstances infer, what her purpose or intent was. To draw such an inference, is not only your privilege but it is also your duty.''

The defendant objected to these instructions as violative of *Sandstrom* and requested that the jury be recharged on intent. The court obliged, but in its effort to clarify the previous instructions it told the jury that its prior instructions ''that a person is deemed to intend the natural consequences of his or her acts . . . is generally a true proposition of law.''

The defendant asserts that the original instruction on intent shifted the burden of proof to her, thereby relieving the state of its burden of proving the essential element of intent beyond a reasonable doubt. The defendant also asserts that the court's reinstruction on intent failed to clarify the improper instructions in the jurors' minds. The state claims that when the jury instructions are taken as a whole, the charge allowed the jury to interpret the court's instruction in a constitutional manner.

Although the defendant objected to the initial jury charge on intent, she did not object to the court's second charge. In addition, she has failed to make a claim under the bypass rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). As a preliminary matter, therefore, we must decide whether this claim is reviewable.

This court may, in the interest of justice, notice plain error that was not brought to the attention of the trial court. Practice Book § 4185. Where, as here, the rec-

ord accurately reflects that the burden of proving an essential element of the crime charged was shifted to the defendant, it is in the interest of justice that we review the claim under the plain error doctrine.

"The United States Supreme Court in *Sandstrom* v. *Montana,* supra, 517, 524, held that a jury instruction which stated that '[t]he law presumes that a person intends the ordinary consequences of [her] voluntary acts' may have been interpreted by the jury 'as constituting either a burden-shifting presumption . . . or a conclusive presumption . . . .' '[E]ither interpretation would have deprived [the] defendant of [her] right to the due process of law" and was therefore unconstitutional. *Sandstrom* v. *Montana,* supra, 524." *State* v. *Fernandez,* 198 Conn. 1, 19–20, 501 A.2d 1195 (1985). It is firmly established that the state bears the burden of proving each essential element of the crime charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). A specific intent to interfere with the performance of an officer's duties is an essential element of § 53a-167a and as such must be proved beyond a reasonable doubt. *State* v. *Beckenbach,* 1 Conn. App. 669, 679–80, 476 A.2d 591 (1984), rev'd, 198 Conn. 43, 501 A.2d 752 (1985).

An instruction such as the one given in this case is indistinguishable from the instruction given in *Sandstrom* in that it shifted the burden of proof to the defendant to prove that she did not have the required state of mind or intent and, consequently, denied her the presumption of innocence and due process of the law. *State* v. *Fernandez,* supra, 21. In addition, any effort to correct the instructions was negated by the trial court when it told the jury that its earlier incorrect statement was "generally a true proposition of law."

## II

The defendant also claims that the trial court improperly restricted her cross-examination of LeRose and Barlow when it denied her access to the officers' confidential personnel and internal affairs records. Although we are remanding this case as a result of our decision on the the first issue, we will address this issue because it may recur upon retrial.

### A

OFFICER LEROSE'S PERSONNEL AND INTERNAL
AFFAIRS RECORDS

The facts that are relevant to the disposition of this claim are as follows. The state's case consisted entirely of the testimony of Officers LeRose, Maher and Barlow. During the course of trial, the defendant subpoenaed LeRose's personnel and internal affairs records and requested that they be admitted into evidence. She contended that these records contained information about charges filed against LeRose in 1986 in connection with an allegedly stolen license plate. The defendant asserted that any information in the file about this incident could be exculpatory or might impeach LeRose's credibility. The state moved to quash the subpoena, arguing that the officer's personnel and internal affairs files are privileged under General Statutes § 1-19 (b) (2), and are, therefore, exempt from review. The trial court ruled that it would inspect the records in camera, in accord with *State* v. *Januszewski,* 182 Conn. 142, 170–75, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981).

After examining the records in camera, the court determined that although disciplinary proceedings did arise out of LeRose's 1986 charges, there was nothing in the files to indicate that he had stolen a license

plate, had known that the plate was stolen, or had had any reason to believe the plate was stolen. The court then found that the files disclosed no acts of misconduct that impugned LeRose's truth and veracity.

The defendant was permitted to continue her cross-examination of LeRose for a short time before the jury returned. Out of the presence of the jury, LeRose admitted that he had been arrested in 1986 on a sixth degree larceny charge and had pleaded guilty to the motor vehicle infractions of misuse of a license plate and operation of an unregistered vehicle. He also admitted that he had been the subject of a disciplinary hearing and had been suspended from duty for a time. The defendant objected to the court's ruling that this information would not come before the jury, excepted to the court's ruling and now appeals this claim.

Evidence of a conviction is admissible only if the crime committed is subject to punishment of a prison term of more than one year. General Statutes § 52-145; *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341 (1965). "Evidence of arrest without conviction . . . is not admissible . . . to attack the credibility of a witness." *State* v. *Moynahan,* 164 Conn. 560, 600, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). Neither the crime with which LeRose was charged nor the infractions to which he pleaded guilty are admissible under this standard. This does not, however, end our inquiry.

Evidence of specific acts of misconduct that relate to veracity, but not those that merely illustrate general bad behavior, may be offered to attack the credibility of a witness. *State* v. *McIntosh,* 12 Conn. App. 179, 183, 530 A.2d 191, cert. denied, 205 Conn. 808, 532 A.2d 77 (1987). Where the evidence of the witness' specific misconduct is located in a confidential police

personnel or internal affairs file, that information is protected under General Statutes § 1-19 (b) (2) and can be disclosed only after the court has examined the contents of the file in camera to determine if the defendant's need to examine the confidential material outweighs the public policy in favor of the confidentiality of private and personal information. *State* v. *Januszewski,* supra, 171–72. Once the court has examined the contents of the files, what material should be disclosed is a matter of judicial discretion. Id., 172. Requests for information from the officer's file must be specific and set forth how the requested information relates to the case at hand. Id., 173. The court should release only information that is clearly material and relevant. Id.

Our review of the personnel and internal affairs files reveals that although the great majority of the information contained in these files does not go to truth and veracity, some of the material contained therein does reflect upon this officer's credibility. Upon remand both files should be thoroughly reexamined and any material that does go to LeRose's credibility should be revealed to the defendant in accord with *State* v. *Januszewski,* supra, 173–74.

B

OFFICER BARLOW'S PERSONNEL AND INTERNAL
AFFAIRS RECORDS

The defendant also requested that the court inspect Barlow's personnel and internal affairs records. The basis of this request is that Barlow was once named as a defendant in a civil suit brought by other parties and arising out of a separate arrest. The trial court ruled that the defendant had not set forth sufficient reasons to warrant the inspection of the officer's file

because the defendant failed to show that anything in the file could relate to Barlow's truth and veracity. The court then denied the requested review.

As noted above, a defendant's request for information from a confidential police personnel or internal affairs file must be specific and set forth the issue in the case to which the confidential information will relate. Id., 173. Further, a criminal defendant cannot conduct a general fishing expedition through the records of a police officer. Id., 172.

We agree with the trial court that there was an insufficient nexus between the information requested and the case at hand. Had the defendant been granted access to Barlow's records, the ensuing inspection of the files would have been no more than a general fishing expedition.

### III

The defendant's final claim is that the court improperly stated the law on the lesser included offense. Because this issue is not apt to recur upon retrial, we will not review it.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.