STATE OF CONNECTICUT *v.* DANIEL VINAL, JR.
(13018)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued November 3—decision released December 15, 1987

*F. Mac Buckley,* for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark* and *Andrew Wittstein,* assistant state's attorneys, for the appellee (state).

PETERS, C. J. This appeal is the result of a retrial ordered by this court in *State* v. *Vinal,* 198 Conn. 644, 504 A.2d 1364 (1986) (hereinafter, *Vinal I).* We held there that the defendant, Daniel Vinal, Jr., who had been convicted of the crime of murder after a joint trial with a codefendant, James Avis, was entitled to a separate trial. In anticipation of the retrial, the state filed a substitute information charging the defendant with the crimes of murder in violation of General Statutes § 53a-54a[1] and felony murder in violation of General Statutes § 53a-54c.[2] After a finding of probable cause, and a trial to a jury, the defendant was found guilty. He appeals from the judgment sentencing him to a term of imprisonment of twelve years to life on both counts of the information. We find no error.

The events leading to the defendant's conviction are fully described in our opinion in *Vinal I,* supra, 647. The evidence at the defendant's retrial was essentially the same. The jury could reasonably have found the fol-

---

[1] General Statutes § 53a-54a provides in relevant part: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime . . . he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

lowing facts. Early on the morning of October 8, 1978, the victim left a Torrington bar and drove his car toward Litchfield. The defendant and James Avis followed him in a borrowed car. They forced the victim's car to the side of the road, stopped their own car nearby and approached the victim. When the victim resisted Avis' efforts to take his wallet, the victim was shot by the defendant. Avis then took the wallet and the defendant and Avis fled. The victim died of his gunshot wound.

The theory of the defense was that Avis, and not the defendant, had committed the crimes with which the defendant was charged. In the state's view, to the contrary, both men were involved in the crimes.[3] The jury found the defendant guilty as charged and the trial court denied the defendant's motions for a new trial and for a judgment of acquittal.

The defendant, in his appeal from the judgment against him, has raised three issues. He alleges that the trial court erred in: (1) finding probable cause for the charges of murder and felony murder; (2) limiting the cross-examination of a state's witness concerning a matter contained in his sworn affidavit; and (3) excluding the testimony of a defense witness concerning other crimes for which Avis had been arrested.

I

The defendant, in his first claim of error, urges us to hold that the trial court should have dismissed the charges against him because of the state's alleged failure to establish probable cause to continue his prosecution. The trial court, with the consent of the parties, made its determination of probable cause on the basis of the evidence presented in the transcript of the proceedings in *Vinal I*. In *Vinal I*, supra, 657–59, this court

---

[3] The state's brief indicates that James Avis has been prosecuted and convicted of the crime of felony murder.

had concluded that a jury could reasonably have found this evidence to have established the defendant's guilt beyond a reasonable doubt. Considering the matter afresh, the trial court found probable cause.

When a trial court is asked to make a finding of probable cause, it must determine whether the state's evidence would warrant a person of reasonable caution to believe that the defendant has committed the crime of which he has been accused. *State* v. *Mitchell,* 200 Conn. 323, 336, 512 A.2d 140 (1986). "The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable doubt at trial . . . ." Id.

Without contesting the *Mitchell* standard, the defendant argues that the trial court's finding of probable cause was invalid in this case for two reasons. Principally, he maintains that a reasonable person would have believed that it was Avis and not he who had committed the crimes in question. With regard to this claim, he contends that our holding in *Vinal I* regarding the sufficiency of the evidence does not preclude us from concluding that the trial court erred in finding probable cause because the trial court had evidence before it at the probable cause hearing that had been suppressed at trial in *Vinal I.* Specifically, the defendant points to a statement by Avis to JoAnn VanBlarco that he had killed two men and to Avis' arrest in the state of Washington on charges of kidnapping and assault with a firearm. According to the defendant, a reasonable person would have concluded that this evidence incriminated Avis and exculpated the defendant. Secondarily, the defendant contends that the evidence demonstrates that he was too intoxicated to have committed the crimes.

We are not persuaded on either count. The evidence implicating Avis that had been excluded at trial in

*Vinal I* does not substantially undermine the defendant's involvement in the crime, given the state's theory that both men were participants. Moreover, Avis' excluded statement to VanBlarco was merely corroborative of his confession, which had been admitted at trial in *Vinal I.* As to the defendant's alleged intoxication, it was considered and rejected in *Vinal I,* supra, 657–59, where the issue was sufficiency of the evidence to establish guilt. Our holding in *Vinal I,* consequently, is dispositive of the defendant's claim.

## II

The defendant's second claim of error relates to an allegedly erroneous limitation of his right to cross-examine state police Sergeant Nicholas Valerio. Valerio supervised the homicide investigation in this case and executed the sworn affidavit that led to the defendant's arrest. That affidavit incorporated not only Valerio's own observations but also those of other officers who had participated in the investigation. The defendant attempted to cross-examine Valerio regarding statements made by witnesses to these other officers. The state successfully objected to this cross-examination, and the defendant has not raised that issue on this appeal. He does, however, maintain that he should have been allowed to cross-examine Valerio about the contents of the arrest affidavit with regard to statements made by state's witness Martin Bielik to another, unidentified, police officer.

Bielik was the owner of the car that Avis drove on the morning of the crime. Bielik had previously testified that when the defendant and Avis had appeared at Bielik's house early that morning, Avis had made a "gesture" to indicate that "something had happened" and that Avis had subsequently reiterated this message verbally. The defendant's wife later testified that the defendant and Avis had returned to the defendant's

house in the early hours of the day of the crime. The arrest affidavit contained a paragraph indicating that Bielik had told the police that, on the morning when the defendant and Avis had come to Bielik's house, he, Bielik, had been too intoxicated to know what time it was.

The defendant attempted to ask Valerio if he could recall "anything Mr. Bielik said that you put in this affidavit concerning the events of the early morning of October 8th." Because Valerio had not personally interviewed Bielik, the trial court sustained the state's objection to the question, even though the defendant maintained that he was not seeking to elicit hearsay testimony since his inquiry was directed not to the truth of the information contained in the affidavit but rather to impeach the credibility of Bielik as a witness against the defendant.

The defendant maintains that the question was relevant and appropriate in order to permit him to lay the basis for his impeachment of Bielik. In addition, he claims that exclusion of the question violated his constitutional right to cross-examination. We disagree.

Despite the defendant's protestations to the contrary, the ground he proffered for the testimony he sought to elicit falls within the classical boundaries of the hearsay exclusion. Although he wanted to bring out the statement in the affidavit in order to impeach Bielik, the impeaching effect of the affidavit depended upon the truth of the matter there asserted. As the state points out, such a statement is hearsay. See *State* v. *Silveira,* 198 Conn. 454, 473, 503 A.2d 599 (1986); *State* v. *Barlow,* 177 Conn. 391, 396, 418 A.2d 46 (1979); *State* v. *Saia,* 172 Conn. 37, 51, 372 A.2d 144 (1976). An arrest warrant affidavit may rely on hearsay so long as the magistrate is provided with some of the underlying circumstances that indicate the statements are

reliable. See *Jones* v. *United States,* 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960); *State* v. *Ballas,* 180 Conn. 662, 665–66, 433 A.2d 989 (1980); *State* v. *Townsend,* 167 Conn. 539, 557, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975); C. McCormick, Evidence (1987 Sup.) § 245. A hearsay statement does not, however, for that reason, become admissible at trial. See *State* v. *Stepney,* 191 Conn. 233, 249, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Packard,* 184 Conn. 258, 274, 439 A.2d 983 (1981); *Dowling* v. *Kielak,* 160 Conn. 14, 17–18, 273 A.2d 716 (1970). The trial court's ruling on this issue was therefore entirely proper.

The defendant's related constitutional argument, which he failed to raise at trial, is equally unavailing. Although there is a constitutional right to cross-examine adverse witnesses to uncover matters of motive, interest, bias and prejudice that might undermine the reliability of the witness' testimony,[4] that principle has no application here. The defendant's interest in impeaching Bielik did not put Valerio's reliability into issue. "Where reliability is not directly implicated . . . the scope of cross-examination is within the discretion of the trial court. *State* v. *Vitale,* 197 Conn. 396, 402–403, 497 A.2d 956 (1985); *State* v. *Gaynor,* 182 Conn. 501, 510–11, 438 A.2d 749 (1980)." *State* v. *Weidenhof,* 205 Conn. 262, 271, 533 A.2d 545 (1987). We can discern no abuse of discretion. Nothing in the present record discloses that the defendant was pre-

---

[4] The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution confer upon a defendant in a criminal case the right to be confronted with the witnesses against him. A significant aspect of the right of confrontation is the cross-examination of adverse witnesses to expose to the jury whatever facts might bear upon the reliability of their testimony. *State* v. *Weidenhof,* 205 Conn. 262, 270, 533 A.2d 545 (1987); *State* v. *Jarzbek,* 204 Conn. 683, 692–93, 529 A.2d 1245 (1987), and cases there cited.

cluded from making appropriate inquiries into the identity of the person who interviewed Bielik and thereafter eliciting details about the statement in the affidavit from that person. For these reasons, we conclude that the trial court's limitation of Valerio's cross-examination cannot be faulted.

## III

The defendant claims finally that he should have been permitted to elicit testimony from his witness, Trooper James Blais, about the nature of the crimes for which Avis had been arrested in Seattle, Washington. Blais testified that he had undertaken a prolonged nationwide search for Avis after Avis' flight from this jurisdiction. Avis' whereabouts came to light when, on June 27, 1980, Connecticut authorities received a teletype notification from the Seattle police department that they had arrested Avis. Pursuing this line of questioning, the defendant then asked Blais "for what" Avis had been arrested. The state objected on the grounds of hearsay, relevance and immateriality. The objection was sustained despite the defendant's claim that the jury should have been allowed to hear that Avis had been arrested for kidnapping and assault with a firearm in order to impeach Avis' credibility and to show that he was the type of person who would have committed the crimes with which the defendant had been charged.

On appeal, the defendant renews his claim that the defense should have been allowed to introduce evidence about the underlying crimes for which Avis was arrested in Seattle. He argues that the evidence was offered, "not . . . for the truth of the matter, but only to show the arrest did happen." That information was, however, provided the jury. In reality, the defendant wanted the grounds of the arrest before the jury to bolster his argument that Avis was the kind of person who

would have robbed and killed the victim in this case. Even if such information was relevant to bolster the defendant's theory of the case, the record fails to disclose that Blais had any personal knowledge of the reasons for Avis' arrest or of the reliability of the grounds that led the Seattle police to proceed as they did.[5] At best, he could have testified about a statement made by the Seattle authorities. Such testimony is hearsay, and the court properly sustained the state's objection to its admissibility. See *State* v. *Silveira,* supra; *State* v. *Packard,* supra; *State* v. *Barlow,* supra.

There is no error.

In this opinion the other justices concurred.

---

[5] At oral argument the defendant claimed that Blais had personal knowledge concerning the circumstances surrounding the arrest. He had failed, however, to raise this possibility as a basis for admitting the arrest in the trial court.